1

**MILBANK LLP**
Alex G. Romain (SBN 314694)
aromain@milbank.com
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4374
Facsimile: (213) 892-4274

2

3

4

5

Sean M. Murphy (admitted *pro hac vice*)
smurphy@milbank.com
Matthew Laroche (admitted *pro hac vice*)
mlaroche@milbank.com
Vanessa Gonzalez-Ahmed (admitted *pro hac vice*)
vgonzalez-ahmed@milbank.com
55 Hudson Yards, 34th Floor
New York, NY 10001-2163
Telephone: (212) 530-5688
Facsimile: (212) 822-5688

6

7

8

9

10

*Attorneys for Defendant*
*NFP RETIREMENT, INC.*

11

12

13

## UNITED STATES DISTRICT COURT

14

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

| | |
|---|---|
| ROBERT LAUDERDALE, et al., | Case No. 8:21-cv-301-JVS-KES |
| Plaintiffs, | Honorable James V. Selna<br>PRESIDING JUDGE |
| v. | **DEFENDANT NFP RETIREMENT,** |
| NFP RETIREMENT, INC., et al., | **INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| Defendants. | |
| | [Filed concurrently with Notice of Motion and Motion; Declaration of Matthew Laroche; Joint Request for Incorporation and Judicial Notice; and Proposed Order] |
| | Date: December 20, 2021<br>Time: 1:30 PM<br>Department: Santa Ana, Courtroom 10C |
| | Action Filed: February 16, 2021<br>Trial Date: October 4, 2022 |

16

17

18

19

20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

TABLE OF ABBREVIATIONS ..........................................................................iv

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT .................................................................................................5

    A.    Plaintiffs Failed to Allege a Fiduciary Duty Claim Against NFP Related To The Selection or Retention of the flexPATH Funds (Count I) ......................5

        1.    NFP Was Not Responsible for Selecting or Removing the flexPATH Funds .........................................................................................................5

        2.    Plaintiffs Failed to Plausibly Allege that NFP Breached its Fiduciary Duties in Providing Advice to the Wood Defendants Concerning the Selection of the flexPATH Funds .......................................................6

            a.    The Selection of the flexPATH TDFs .......................................6

            b.    The Contested CITs ..................................................................11

        3.    Plaintiffs Failed to Plausibly Allege that NFP Breached its Duty in the Retention of the flexPATH Funds ..................................................15

        4.    Plaintiffs Failed to Plausibly Allege that NFP Breached its Duty of Loyalty As To Any of Its Conduct .......................................................16

    B.    Plaintiffs Failed to Address Count II's Pleading Deficiencies ...................17

    C.    Plaintiffs Failed to Address Count III's Pleading Deficiencies ..................20

    D.    The Court Should Not Permit Count I to Proceed Against NFP Under a Theory of Co-Fiduciary Liability ................................................................22

III.  CONCLUSION ...........................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baird v.BlackRock Institutional Trust Co.*,
　　403 F. Supp. 3d 765 (N.D. Cal. 2019) ........................................................ 10

*Bonham v. Adamson*,
　　No. 17 Civ. 727 (CBC), 2018 WL 5283440 (D. Nev. Oct. 24, 2018) ........................ 17

*Cates v. The Trustees of Columbia Univ. in the City of N.Y.*,
　　No. 16 Civ. 06524 (KBF) (S.D.N.Y Feb. 7, 2017).................................... 19, 20

*In re Computer Scis. Corp. Erisa Litig.*,
　　635 F. Supp. 2d 1128 (C.D. Cal. 2009) ........................................................ 9

*Friend v. Sanwa Bank California*,
　　35 F.3d 466 (9th Cir. 1994) ............................................................. 10, 18

*Harris Tr. & Sav. Bank v. Salomon Bros., Inc.*,
　　832 F. Supp. 1169 (N.D. Ill. 1993)............................................................ 22

*Harrison v. Institutional Gang of Investigations*,
　　No. 07 Civ. 3824 (SI) (PR), 2009 WL 1277749 (N.D. Cal. May 6, 2009) ................ 17

*Henderson v. Emory Univ.*,
　　No. 16 Civ. 02920 (CAP) (D. Ga. Dec. 20, 2017) .................................... 19, 20

*London v. Coopers & Lybrand*,
　　644 F.2d 811 (9th Cir.1981) ................................................................ 17

*Lowen v. Tower Asset Management, Inc.*,
　　829 F.2d 1209 (2d Cir.1987) .................................................................. 22

*O'Connor v. City of Desert Hot Springs*,
　　2012 WL 13195089 (C.D. Cal. Jan. 11, 2012)................................... 5, 17, 21

*Parrino v. FHP, Inc.*,
　　146 F.3d 699 (9th Cir. 1998) .................................................................. 2

*Perez v. WPN Corp.*,
　　No. 14 Civ. 1494 (NBF), 2017 WL 2461452 (W.D. Pa. June 7, 2017) ................ 22, 23

ii

*Ramos et al. v. Banner Health et al.*,
    No. 15 Civ. 02556 (WJM) (D. Co. Nov. 9, 2016) ................................. 12, 19

*Reetz v. Lowe's Companies, Inc.*,
    No. 18 Civ. 75 (KDB) (DCK) (W.D.N.C. Oct. 12, 2021) ............................ 10

*ScripsAmerica, Inc. v. Ironridge Glob. LLC*,
    119 F. Supp. 3d 1213 (C.D. Cal. 2015) ....................................... 5, 17

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .............................................. 6, 15

*Sweda v. The Univ. of PA*,
    No. 16 Civ. 4329 (E.D. Pa. Nov. 21, 2016) ................................... 19, 20

*Tracey v. Mass. Inst. of Tech.*,
    No. 16 Civ. 11620 (NMG), 2018 WL 1468904 (D. Mass. Mar. 1, 2018) ............. 12

*White v. Chevron Corp.*,
    No. 16 Civ. 000793 (PJH) ................................................... 12

*White v. Chevron Corp.*,
    No. 16 Civ. 793 (PJH), 2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) ............... 16

*Wright v. Oregon Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ................................................. 8

**Statutes**

29 U.S.C. § 1105(a)(1) .......................................................... 22, 23

29 U.S.C. § 1105(d) ............................................................ 22, 23

29 U.S.C. § 1109 .................................................................. 10

**Other Authorities**

17 CFR § 275.206(4)-1 .............................................................. 9

Fed. R. Civ. P. 12(b)(6) ............................................................ 1

Local Rule 7-4 ..................................................................... 1

DEFENDANT NFP RETIREMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Bps | Basis points |
| CIT | Collective Investment Trust |
| Committee | Committee of the Wood 401(k) Plan |
| Contested CITs | International Stock Fund I1; Core Bond Fund I1; and Large Cap Value Fund I1 |
| ERISA | Employee Retirement Income Security Act Of 1974, 29 U.S.C. § 1001 *et seq.* |
| Ex. | Exhibits to the Declaration of Matthew Laroche in Support of Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint |
| FAC | First Amended Complaint |
| flexPATH | flexPATH Strategies, LLC |
| flexPATH TDFs | Target Date Funds affiliated with flexPATH |
| IAA | Investment Advisor Agreement |
| IMA | Investment Management Agreement |
| IPS | Investment Policy Statement |
| NFP | NFP Retirement, Inc. |
| Plan | Wood 401(k) Plan (f/k/a Wood Group 401(k) Plan) |
| QDIA | Qualified Default Investment Alternative |
| SAC | Second Amended Complaint |
| TDF | Target Date Fund |
| Wilmington | Wilmington Trust, N.A. |
| Wood | Wood Group Management Services, Inc. and Wood Group U.S. Holdings, Inc. |

DEFENDANT NFP RETIREMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# I.    INTRODUCTION

Defendant NFP, by and through its attorneys, and pursuant to FRCP 12(b)(6) and L.R. 7-4, submits this Memorandum of Points and Authorities in support of its Motion to Dismiss Plaintiffs' SAC. The SAC asserts the same three claims against NFP as those in the FAC, including that NFP (i) breached its fiduciary duties of loyalty and prudence by selecting and retaining, and advising the Wood Defendants to select and retain the flexPATH Funds (Count I); (ii) breached its fiduciary duties of loyalty and prudence by selecting investment options with unreasonably high fees (Count II); and (iii) engaged in a prohibited transaction by causing the Plan to use the flexPATH TDFs (Count III).

Plaintiffs' claims in the SAC are deficient for substantially the same reasons as those set forth in the Court's order on NFP's motion to dismiss the FAC. (Dkt. 98 (the "Order")).[1] In the Order, the Court dismissed the FAC's claims against NFP, except those premised on co-fiduciary liability, principally because Plaintiffs failed to plausibly allege that NFP (i) had control over the selection of the flexPATH Funds, (ii) was not a separate corporate entity from flexPATH, and (iii) used an imprudent process when advising the Wood Defendants. On the first two defects, the SAC does not even attempt to add *any* new allegations on NFP's control over Plan assets or that the corporate veil between NFP and flexPATH should be ignored. Thus, to the extent the claims are premised on NFP's purported selection of those investments or NFP's affiliation with flexPATH, those claims should again be dismissed. (Order at 13 (Count I); 14 (Count II); 16 (Count III)).

Plaintiffs have added a handful of allegations attempting to cure their pleading deficiencies as it relates to NFP's process in advising the Wood Defendants. The SAC conclusorily alleges that meeting minutes and materials presented by NFP to the Wood

---

[1] For efficiency, NFP refers the Court to flexPATH's brief for the appropriate pleading standard and procedural history, and NFP focuses its arguments on whether the SAC cures the defects identified in the Court's Order. NFP also relies on flexPATH's and the Wood Defendants' briefs to the extent they further support dismissal of the claims against NFP.

1

Defendants do not reflect a reasonable process. However, Plaintiffs steadfastly avoid alleging what process NFP employed, what information was considered, and what information drove NFP's alleged advice or the Wood Defendants' decisions.  Instead, Plaintiffs claim that additional information should have been "presented" to the Wood Defendants, such as additional comparisons to unidentified "passively managed target date alternatives" (SAC ¶ 87), or even less specific "investment alternatives" (SAC ¶¶ 121, 136).

More importantly, the SAC quotes from and relies on a set of self-selected documents, but Plaintiffs grossly mischaracterize those documents and omit references to other portions of the documents that directly contradict their claims.[2] Examples include:

- New Allegations Related to flexPATH TDFs: Plaintiffs contend that NFP did not conduct an evaluation of other unspecified passively managed target date fund alternatives or present that information to the Wood Defendants before the flexPATH TDFs were added to the Plan. (SAC ¶ 86). But the documents the SAC relies upon reflect that NFP presented risk and performance information of six different TDF providers as well as a comparative analysis of the glidepaths of three TDFs previously in the various Wood Plans, one of which was a passively managed TDF. (*See* Ex. 1 at 24-29; *see generally* Ex. 2 at 59-71 and Ex. 3 at 139).

- New Allegations Related to Contested CITs: Plaintiffs claim that "NFP did not present" the Wood Defendants with the "actual performance history" of the Contested CITs. (SAC ¶ 108, 120). But the documents Plaintiffs rely on reflect that NFP presented the performance history for those funds' underlying managers, including versus peer funds and/or their benchmarks, over three-, five-, and ten-year time periods. (Ex. 12 at 223, 227; Ex. 13 at 251-52).

- Plaintiffs also allege that two of the three mutual funds that were replaced by the Contested CITs scored a "9" or "10" (out of 10) under NFP's scoring methodology. But they omit that the other replaced fund scored a "4," all three of the Contested

---

[2] Because Plaintiffs are trying to avoid dismissal "by deliberately omitting references to documents upon which their claims are based," NFP requests that the Court consider those documents under the incorporation by reference doctrine. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998). The documents are attached to the Declaration of Matthew Laroche and referred to herein as "Ex."

DEFENDANT NFP RETIREMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

CITs scored a "10," and had substantially lower fees than the funds they replaced. (Ex. 13 at 246, 250).

- <u>New Allegations Related to Excessive Fees</u>: Plaintiffs allege that NFP failed to recommend the R share class of the flexPATH TDFs, which charged slightly higher fees than the I1 share class. (SAC ¶ 147). But the documents Plaintiffs rely on reflect that the I1 share class had a *lower* net fee for Plan participants than the R class shares. (Ex. 8 at 190 (reflecting that the I1 share class included a fee credit back to the Plan); Ex. 12 at 217 (reflecting that the flexPATH TDFs' net expense ratio for the Plan was 17.5 bps, which was lower than the R share class)).

The SAC's other new allegations are that NFP "recommended" flexPATH TDFs to the Wood Defendants prior to flexPATH being hired, and that NFP previously represented that it did not have a role in the Wood Defendants' selection of flexPATH or flexPATH's selection of flexPATH Index TDFs. (SAC ¶¶ 45-51, 57). This is a complete red herring. The claims against NFP were dismissed for reasons that had nothing to do with whether NFP made "recommendations" on the flexPATH Funds. Indeed, for the Contested CITs and other funds subject to the excessive fee claim, NFP accepted as true the allegations that it had recommended those funds, yet those claims were fully dismissed. It was *because* they were "recommendations" and not an exercise of discretionary control that the Court found those claims implausible. (Order at 3 (the FAC alleged that the Contested CITs were added to the plan based on the "advice and recommendation of NFP"); 12 (dismissing claim that NFP breached its fiduciary duty based on "its involvement in the decision to include the flexPATH funds as Plan Investments" because "there was no allegation that NFP had any discretion" over those investments)).

Nor did NFP misrepresent any facts in prior briefing. NFP's statements were responding directly to Plaintiffs' allegations that NFP played a role in *selecting* flexPATH as a 3(38) fiduciary or had discretion to *select* the flexPATH TDFs. NFP responded that those allegations were directly contradicted by the IMA and IAA, and argued that it could not be liable for engaging in a prohibited transaction for *selecting* the flexPATH TDFs, not that it never presented information about those TDFs to the Wood Defendants. Similarly,

3

Plaintiffs cite multiple statements by NFP that it "had no role in evaluating whether to engage flexPATH." (SAC ¶ 47 (quoting Dkt. 60-1 at 25). But Plaintiffs omit the parenthetical that immediately follows, which quotes various portions of the IMA that make plain that the Wood Defendants "were solely responsible for evaluating and deciding whether to engage flexPATH." Plaintiffs oddly criticize NFP for quoting the language in the IMA, which (as both the FAC and SAC allege) states that NFP was not responsible for the *selection* of flexPATH. (FAC ¶ 47 and SAC ¶¶ 45, 47).[3]

None of the documents cited by Plaintiffs undercut NFP's statements. NFP previously argued, and continues to argue, that its alleged "involve[ment] in the decision" to add the flexPATH TDFs funds "adds nothing to the analysis" on the plausibility of the claim that NFP *selected* those TDFs, because being "'involved in the decision' does not equate to discretionary responsibility, authority, or control." (Dkt. 86 at 5). The additional allegations that NFP presented information on the flexPATH Index+ TDF to the Wood Defendants does not amount to control.[4] Rather, the SAC alleges that flexPATH controlled the selection of the TDFs pursuant to its "independent exercise of discretion." (SAC ¶ 72, n.10; *see also* Order at 6 ("It was therefore left to flexPATH whether to eventually select its own funds")). NFP is therefore not liable for the selection of the TDFs.

For all of these reasons, Plaintiffs' claims should be dismissed with prejudice. Plaintiffs have already amended the Complaint twice, most recently with the benefit of the deficiencies identified in the Court's prior Order and additional documents produced in discovery. Having failed to correct the identified errors, dismissal with prejudice is warranted. *See ScripsAmerica, Inc. v. Ironridge Glob. LLC*, 119 F. Supp. 3d 1213, 1265

---

[3] The SAC also ignores that when information was presented to the Wood Defendants in regard to asset allocation solutions (including TDFs), NFP was offering its additional services to serve in a 3(38) fiduciary capacity responsible for asset allocation solutions for the Plan. (Ex. 3). Ultimately, the Wood Defendants did not engage NFP for this role, selecting flexPATH instead. (SAC ¶ 26).

[4] Ironically, Plaintiffs' allegation that NFP recommended the flexPATH Index+ TDFs only underscores the deficiency of their claim that NFP had discretion over TDF selection. As discussed below, after NFP presented information on the Index+ TDFs, the Wood Defendants determined that it preferred the passive Index TDFs instead.

4

(C.D. Cal. 2015) (dismissing amended complaint where plaintiff was put on notice by the court of the deficiencies in the prior complaint but failed to sufficiently address them); *O'Connor v. City of Desert Hot Springs*, 2012 WL 13195089, at *2 (C.D. Cal. Jan. 11, 2012) (granting motion to dismiss where plaintiff was "clearly informed . . . of specific deficiencies in his First Amended Complaint, [but] failed to add any new substantive factual allegations in his Second Amended Complaint that addressed the specific concerns raised by the Court [in its order dismissing the prior complaint]").

## II.   ARGUMENT

### A.   Plaintiffs Fail to Allege a Fiduciary Duty Claim Against NFP Related To The Selection or Retention of the flexPATH Funds (Count I)

#### 1.   NFP Was Not Responsible for Selecting or Removing the flexPATH Funds

In Count I, Plaintiffs allege that NFP breached its duties of loyalty and prudence by selecting and retaining the flexPATH Funds. (SAC ¶ 136). The Court previously dismissed these claims because "[t]here are no factual allegations that NFP had any discretion over whether the flexPATH funds were offered as Plan investments, and without such allegations such a claim is not plausible." (Order at 13 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also id.* ("The FAC does not include allegations that NFP was a fiduciary under § 1002(21)(A)(i). . . . This is consistent with the Investment Advisory Agreement between NFP and the Wood Defendants, which stated that NFP was a fiduciary under § 1002(21)(A)(ii)").

Plaintiffs make no attempt to cure this defect. The SAC continues to allege that NFP was a fiduciary under § 1002(21)(A)(ii), not that it had discretionary authority. (SAC ¶¶ 25, 99 ("The Wood Defendants . . . added [the Contested CITs] to the Plan in late 2018")). Thus, to the extent Count I is premised on NFP's selection of the flexPATH Funds, it should be dismissed with prejudice. *See, e.g.*, *ScripsAmerica, Inc.*, 119 F. Supp. 3d at 1265.

DEFENDANT NFP RETIREMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## 2. Plaintiffs Failed to Plausibly Allege that NFP Breached its Fiduciary Duties in Providing Advice to the Wood Defendants Concerning the Selection of the flexPATH Funds

Plaintiffs also reassert their claim that NFP breached its fiduciary duty in providing *advice* to the Wood Defendants about the selection of the flexPATH Funds. (SAC ¶ 168). The Court previously dismissed this claim because there were no supporting allegations, and Plaintiffs did not meet their burden of alleging that NFP employed an unreasonable process with respect to any advice. (Order at 14). As discussed below, the SAC's new allegations do not cure those defects.

### a. The flexPATH TDFs

The SAC relies on materials presented by NFP to the Wood Defendants about the flexPATH TDFs in attempting to allege that NFP employed a defective process for its investment advice. (SAC ¶ 28). Specifically, Plaintiffs allege that NFP should have "presented" additional information to the Wood Defendants, including other TDF options. (SAC ¶¶ 86-87). But Plaintiffs avoid alleging how many TDF options NFP did analyze. Nor do Plaintiffs allege anything about the process NFP used, the information that *was* considered, or the thorough analysis that supported its alleged advice. Even the self-selected documents upon which the SAC relies reflect a process consistent with published DOL best practices. *See supra* p. 2; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit.").

For example, NFP explained to the Wood Defendants the benefits of TDFs as providing diversification for participants and "minimiz[ing] extreme outcomes" from an overallocation to risky assets. (Ex. 6 at 154). Consistent with DOL guidance,[5] NFP

---

[5] The DOL has provided guidance to fiduciaries selecting QDIAs, which notes the particular importance of considering the TDFs glidepath, the risk levels of different glide-paths, and how well the TDF's characteristics align with the demographics of plan participants. (*See* Ex. 18, U.S. Department of Labor, Target Date Retirement Funds—Tips for ERISA Plan Fiduciaries (Feb. 2013)).

repeatedly provided the Wood Defendants with a "QDIA Selection and Fit Analysis" that analyzed the demographics of the various Wood plans. (*See* Ex. 1 at 23-38). These analyses included equity exposure and performance information of six different TDF providers (Allianz, Wells Fargo, Voya, JP Morgan, Vanguard and Alliance Bernstein) to illustrate how TDFs can expose participants to different levels of risk at retirement. (*Id.* at 24). The glidepaths of the four existing default options (including TDFs from Vanguard, Principal and Fidelity) in the various Wood plans were presented, with all four being categorized as "aggressive." (*Id.* at 29). Lastly, the presentations include information on the glidepath of TDF solutions that allowed participants to select between conservative, moderate, or aggressive glidepaths, including an Empower target date model and the flexPATH TDFs. (*Id.* at 30).

In response to subsequent questions from the Wood Defendants, NFP provided information about the fees and performance of the flexPATH TDFs. The response noted that the objective of using the flexPATH Index+ TDFs "was to preserve features that are represented in all of the Wood Group plans that will be merging together in addition to allowing TDF strategy to serve as the plan's QDIA. The flexPATH Index+ glidepaths continue to offer participants a conservative, moderate and aggressive approach currently utilized in the [Wood] Mustang Plan." (Ex. 3 at 138). The flexPATH Index+ funds were a blend of active and passive strategies, "representing the different investment styles found in the merging plans" that allowed participants "to select among multiple risk-based glidepaths" if they wanted to continue with a more aggressive option. (*Id.* at 139). The performance and cost of the flexPATH Index+ TDFs were compared to yet another target date solution (Putnam Retirement Advantage), noting that the Putnam TDF solution offered less participant choice because it "only offers a one-glidepath approach" whereas flexPATH allowed participants the ability "to select among multiple risk-based glidepaths." (*Id.*).

DEFENDANT NFP RETIREMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

NFP's advice was entirely consistent with the Plan's IPS concerning target date fund selection. (*See* Ex. 16 (2016 IPS)).[6] For example, the 2016 IPS states that "[t]he glide path associated with a set of target-date funds should be reviewed to make sure it is appropriate for the Plan and the Plan's participants" and that "[t]he Plan intends to provide an appropriate range of investment options that may span the risk/return spectrum." (*Id.* at 306, 309). Here, Plaintiffs rely on documents reflecting that NFP presented an analysis of many different TDFs with different glidepaths and presented options that allowed participants across the various merging plans to customize their level of risk.

Though Plaintiffs allege that NFP recommended the flexPATH Index+ TDFs, the SAC acknowledges that the Wood Defendants ultimately preferred the lower-fee flexPATH Index TDFs. The Wood Defendants' meeting minutes, which Plaintiffs rely on, reflect that the Wood Defendants (i) made that decision after "review[ing] the pros and cons of the proposed Target Date Fund line-up"; (ii) considered the Putnam Retirement Advantage TDFs, which NFP had presented, but did not choose it because the potential for "reduced savings . . . could not be guaranteed"; and (iii) "voted unanimously to add the flexPATH Index Target Date Funds to allow the plan to continue offering options with a risk tolerance found in the current fund line-up, so that participants do not perceive the change to be seen as a reduction in benefits." (Ex. 4 at 147).

Thus, even the documents relied on in the SAC reflect a reasoned decision-making process that included analysis of multiple different TDF options, as well as fees, performance, investor choice, and the appropriateness of the glidepath based on information presented by NFP. *See, e.g.*, *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004) ("A court's task in evaluating a fiduciary's compliance with [its duty of prudence] is to inquire whether the [fiduciaries], at the time they engaged in the

---

[6] Plaintiffs also now cite to the 2008 IPS (SAC ¶ 89), but as the Wood Defendants explain in their motion, nothing in that document raises any inference that it was imprudent to offer the flexPATH TDFs.

8

challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." (internal quotation marks and citation omitted)); *In re Computer Scis. Corp. Erisa Litig.*, 635 F. Supp. 2d 1128, 1134 (C.D. Cal. 2009) ("[C]ourts view alleged imprudence in light of the character and aims of the particular type of plan the fiduciary serves; when, like here, retirement plans are at issue, courts are mindful of the long-term horizon of retirement investing . . . ." (citations and internal quotation marks omitted)). As stated above, this process is consistent with the IPS and DOL guidance.

Plaintiffs nevertheless criticize NFP's process with respect to the flexPATH TDFs because NFP allegedly: (i) never "presented" information to the Wood Defendants on the flexPATH Index TDF or other passive TDFs (SAC ¶¶ 73, 78, 87); (ii) and relied on "hypothetical" returns of the flexPATH Index+ TDFs. (*id.* at ¶ 77). These allegations are insufficient as a matter of law to allege NFP's process was unreasonable.

*First*, even if information on other additional passively managed TDFs was not "presented" to the Wood Defendants (SAC ¶¶ 73, 78, 87), the SAC does not and cannot allege that NFP failed to consider this information as part of its process. In addition, the SAC alleges that NFP recommended the flexPATH Index+ TDFs, which is alleged to be "fundamentally different" from the purely passive flexPATH Index TDFs approved by the Wood Defendants. (SAC at ¶ 77). Finally, NFP did present information on passive TDFs (*i.e.*, Vanguard), highlighting the difference in glidepaths consistent with DOL guidance. (*See* Ex. 1 at 24-29).

*Second*, Plaintiffs' criticism of the presentation of "hypothetical" performance data also fails. There is nothing impermissible in presenting such performance data, as it is widely used in the industry and it is expressly permitted by the SEC. *See* 17 CFR § 275.206(4)-1; *see also* Statement of SEC Commissioners Lee and Crenshaw, Dec. 20, 2020 (hypothetical performance information can be a "useful tool" when presented

DEFENDANT NFP RETIREMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

appropriately).[7] Plaintiffs offer no support for their argument that the use of hypothetical data is improper, nor do they explain why providing this data makes the process less robust. *See Reetz v. Lowe's Companies, Inc.*, No. 18 Civ. 75 (KDB) (DCK), Dkt. 262 at 110 (W.D.N.C. Oct. 12, 2021) (rejecting plaintiff's criticism that the challenged fund lacked a sufficiently long performance history as a fund-of-funds vehicle as "those same criticisms could be lodged against any custom or white label fund. Yet, such investment vehicles are common among large defined contribution plans, and the Department of Labor itself has encouraged plans to consider them."). Moreover, the "hypothetical" performance data of the flexPATH Funds is a collection of the actual performance history of the underlying managers. This is consistent with the IPS, which states that "funds with a short time history should be evaluated qualitatively" and that "long-term performance of an investment manager may be inferred through the performance of another investment with similar style attributes managed by such investment manager." (Ex. 16 at 307, 309).

*Finally*, the SAC's allegations concerning NFP's advice on the TDFs fail for an independent reason: NFP's alleged recommendation to use the flexPATH Index+ TDFs could not have caused losses to the plan. Under 29 U.S.C. § 1109, a fiduciary is liable for a breach of fiduciary duty "only to the extent that losses to the plan result from the breach." *Friend v. Sanwa Bank California*, 35 F.3d 466, 469 (9th Cir. 1994); *see also Baird v.BlackRock Institutional Trust Co.*, 403 F. Supp. 3d 765, 789 (N.D. Cal. 2019) (dismissing breach of fiduciary duty claim against investment advisor because the plaintiffs alleged the advisor's advice was not the cause of the losses alleged). As the SAC concedes, NFP presented the flexPATH Index+ TDFs (SAC ¶ 75), but the Wood Defendants approved the purely passive flexPATH Index TDF solution instead (*id.* ¶ 76), and flexPATH selected those TDFs pursuant to its "independent exercise of discretion," (*id.* ¶ 72, n.10); *see also* Order at 6 ("It was therefore left to flexPATH whether to eventually select its own funds").

---

[7] The Commissioners' Statement is available at https://www.sec.gov/news/public-statement/lee-crenshaw-marketing-2020-12-22.

Thus, NFP's alleged advice to use the TDFs that were not ultimately selected cannot have caused the alleged losses.

### b.     The Contested CITs

Plaintiffs' claim related to NFP's alleged advice on the Contested CITs also should be dismissed, as the SAC adds nothing to cure the previous defects that were the basis for the Court's dismissal of this claim. Plaintiffs simply repackage their previous allegations and add allegations that two of the three funds that were replaced by the Contested CITs were performing adequately. (SAC at ¶¶ 125, 137). This is insufficient to state a plausible claim that NFP's advice was imprudent or that its process was deficient.

*First*, Plaintiffs added no new allegations to the SAC supporting that the advice to add the Contested CITs to the Plan was imprudent. The Court previously held that the allegations in the FAC did not allege circumstantial evidence of an improper process with respect to those funds, noting that Plaintiffs did not even allege the historical performance of two of the Contested CITs.[8] (Order at 12-13). Yet, the SAC does not add allegations about the historical performance of those funds. The SAC also alleges that the Contested CITs were imprudent because they had limited performance histories, but those allegations were in the FAC and found to be insufficient. (Order at 18 ("The Court does not believe the selection of a newly minted investment manager is inherently a breach of fiduciary duty")).

The SAC does add new allegations, relying on documents produced in discovery, that two of the three Contested CITs replaced funds that scored a 9 or 10 under the

---

[8] Plaintiffs continue to allege selective performance of only one of the Contested CITs, claiming the International Stock Fund underperformed its benchmark over certain periods. (SAC ¶ 110). But the documents upon which the SAC relies show that the International Stock Fund had outperformed the fund it replaced over several time periods and that it scored a 10 under the IPS methodology when it was added to the Plan. (Ex. 13 at 249-52).

methodology set forth in the IPS. (SAC ¶¶ 125-127, 136-137).[9] These allegations add nothing because similar allegations were in the prior complaint when the court dismissed the claim. (*See* FAC at ¶¶ 123 (alleging that the PIMCO Total Return Fund was outperforming its benchmark prior to its replacement)). In addition, the documents relied on by the SAC reflect that all three of the Contested CITs scored a 10 at the time they were added to the Plan *and* had significantly lower fees. (Ex. 13 at 248-49, 251-52; Ex. 5 at 149). Particularly given Plaintiffs' insistence that prudent fiduciaries must consider fees in selecting investment options and consider lower-cost alternatives (SAC ¶¶ 38-42), advice to replace mutual funds with equal or better performing CITs at a significantly lower cost does not allege circumstantial evidence of imprudence.

*Second*, the SAC does not cure the pleading defects related to NFP's process with respect to the selection of the Contested CITs to replace various mutual fund options on the Plan. Plaintiffs allege that the materials presented to the Wood Defendants did not reflect a "reasoned decision-making process." (SAC ¶ 99). Contrary to Plaintiffs' conclusory allegations, those documents reflect that NFP conducted an analysis and provided substantial information to the Wood Defendants related to the Contested CITs. For example, NFP provided the Wood Defendants a detailed presentation about collective investment trusts generally and two of the Contested CITs in particular. (Ex. 12 at 219-40). Part of that presentation involved a "CIT Education," in which NFP noted the differences between CITs and mutual funds, and described the "Pros and Cons of CITs." (*Id.* at 233-38). This advice mirrors statements made by Plaintiffs' counsel in other ERISA cases about the benefits of using CITs over mutual funds. *See Tracey v. Mass. Inst. of Tech.*, No. 16 Civ. 11620 (NMG), 2018 WL 1468904 (D. Mass. Mar. 1, 2018), Second Am. Compl. ¶ 120 (alleging that defendants breached their fiduciary duty by "failing to avail the Plan of

---

[9] Plaintiffs omit allegations about how the third fund that was replaced (Dodge & Cox International Fund) was performing. The documents they rely on, however, show that the fund was performing poorly, was on the Watch List, and had scored a 4 in the most recent period before being replaced. (Ex. 13 at 246).

12

the fee savings through low-cost collective trusts"); *Ramos et al. v. Banner Health et al.,* No. 15 Civ. 02556 (WJM) (D. Co. Nov. 9, 2016), Am. Compl. ¶ 60 (alleging that defendants failed to prudently consider the use of CITs "that were available to the Plan in the same investment classes, but at far lower expenses paid by Plan participants"); *White v. Chevron Corp.,* No. 16 Civ. 000793 (PJH), Am. Compl. ¶ 177.

The presentation also provided specific expense and performance information related to two of the Contested CITs—the Core Bond Fund and International Stock Fund—which directly contradicts a number of Plaintiffs' allegations in the SAC. (Ex. 12 at 221-29). With respect to the Core Bond Fund, NFP presented information about that CIT's (i) Scorecard Score (10 at the time), (ii) expense ratio versus peer mutual funds (23 basis points versus 78 basis points for the average peer fund), (iii) fee savings as compared to the Plan's then-current investment option in that asset class (50% over the PIMCO Total Return Fund), and (iv) performance versus its benchmark and the PIMCO Total Return Fund for time periods including the current quarter, year-to-date, one-year, five-year, ten-year, and since inception (showing that the Core Bond Fund had outperformed its benchmark over all time periods and outperformed the PIMCO Total Return Fund over several time periods, including three-year, five-year, and ten-year). (Ex. 12 at 221-23).

Similar information was provided about the International Stock Fund, including its (i) Scorecard Score (10 at the time), (ii) expense ratio versus peer mutual funds (39.6 bps versus 119 bps for the average peer fund), (iii) fee savings as compared to the Plan's then-current investment option in that asset class (38% over the Dodge & Cox International Fund), and (iv) the performance of the International Stock Fund's underlying manager (the Templeton Foreign Fund) versus the fund's benchmark (showing that the Templeton Foreign Fund outperformed its benchmark over three-year, five-year, and ten-year periods). (Ex. 12 at 221, 227). Shortly before the Contested CITs were added to the Plan, the Wood Defendants also were provided with information showing the significant cost

DEFENDANT NFP RETIREMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

savings from using each of the CITs. (Ex. 5 at 149 (showing the fees of the Contested CITs, which were significantly lower fees than the funds they replaced by 20 bps to 23 bps)).

The SAC adds no factual allegations demonstrating that NFP's process was unreasonable. Plaintiffs allege that NFP did not provide historical performance information of the Contested CITs to the Wood Defendants. (SAC ¶¶ 108, 120). Of course, Plaintiffs allege that this information was not "presented," but they cannot allege that NFP was not aware of and did not analyze the performance of these funds. The allegation is also inaccurate. As the SAC alleges, the performance of the Contested CITs is based on the performance of the underlying fund strategy. (SAC ¶¶ 110, 119, 135). NFP reported the performance history of each of the Contested CITs underlying funds against their comparable Plan fund and/or their benchmarks over year-to-date, one-, three-, five-, and ten-year periods.[10] These reports show that (i) the Core Bond Fund's underlying manager had outperformed its benchmark over all time periods and the PIMCO Total Return Fund over all time periods except since inception (Ex. 13 at 249 (PIMCO), 252 (Core Bond)), (ii) the Large Cap Value Fund's manager outperformed the MFS Value Fund in all time periods (*id.* at 248 (MFS Value), 251 (Large Cap Value)); and (iii) the International Stock Fund's manager outperformed the Dodge & Cox Fund in all time periods except five- and ten-year (*id.* at 249 (Dodge & Cox), 252 (International Stock)).

Finally, Plaintiffs imply that replacing the existing investment options was inconsistent with the IPS because two of the funds that were replaced were not on the watch list. (SAC ¶¶ 125-127; 137). But advising of the existence of cheaper funds with comparable or better performance does not violate the IPS. The IPS states, among other

---

[10] Again, this is consistent with the IPS's recommendation that funds with short performance histories be evaluated based on the performance of underlying managers. (Ex. 16 at 307 ("[W]here appropriate and available, long-term performance of an investment manager may be inferred through the performance of another investment with similar style attributes managed by such investment manager.")).

things, that monitoring of investment options should include consideration of investment performance and fees and that "monitoring criteria shall not, under any circumstances, be taken as definitive, conclusive, or controlling for removal, termination, or continuation of an investment option. All determinations should be made by [the Wood Defendants], in [their] sole discretion, after taking into consideration any facts and circumstances that it deems to be relevant." (Ex. 16 at 309).

In sum, the new allegations do not revive Plaintiffs' claim about NFP's process concerning the Contested CITs, and those claims should be dismissed with prejudice.

### 3. Plaintiffs Failed to Plausibly Allege that NFP Breached its Duty in the Retention of the flexPATH Funds

Plaintiffs reassert their claim that NFP breached its fiduciary duty in advising on the *retention* of the flexPATH Funds. This claim was previously dismissed by the Court for failing to include factual allegations supporting a breach of duty, and for failing to allege an unreasonable process. (Order at 14). The SAC makes no new allegations about NFP's advice or process for monitoring the Contested CITs, which is fatal to its claim with respect to those investments (as the Court previously held). (*Id.*); *see also Sprewell*, 266 F.3d at 988.

With respect to the flexPATH TDFs, Plaintiffs do not allege that NFP failed to monitor and report on the performance or other aspects of the flexPATH TDFs after those funds were added to the Plan. The only new allegations relating to NFP's process is that NFP did not use a custom-style benchmark until months after those funds were added to the Plan and did not score the flexPATH TDFs under the IPS. (SAC ¶ 92). Those allegations do not resuscitate this claim.

*First*, the SAC does not allege that a style-specific benchmark even existed prior to April 2017. In any event, there is nothing imprudent about not using a style-specific benchmark for a short period of time. NFP regularly reported on performance and

explained factors that contributed to any relative underperformance of the flexPATH TDFs. (*See, e.g.*, Ex. 12 at 217).

*Second*, Plaintiffs' allegation that NFP did not "score" the flexPATH TDFs falls short. (SAC ¶ 92). The IPS makes clear that "Asset Allocation strategies are evaluated over a five year time period" and "funds with short time history should be evaluated qualitatively." (Ex. 16 at 309, 313). The SAC also omits that, though the flexPATH TDFs were not scored, each of its underlying investments was scored and reported to the Wood Defendants, which was consistent with the IPS. (*Id.* at 307-09).

In sum, Plaintiffs have not plausibly alleged that NFP's monitoring of the flexPATH TDFs or Contested CITs was imprudent.

### 4. Plaintiffs Failed to Plausibly Allege that NFP Breached its Duty of Loyalty As To Any of Its Conduct

As noted above, Plaintiffs continue to assert a duty of loyalty claim against NFP concerning the flexPATH Funds (Count I). That claim should be dismissed for the reasons stated above. In addition, the duty of loyalty claim should be dismissed because Plaintiffs have not differentiated between their duty of prudence and duty of loyalty claims. *See White v. Chevron Corp.*, No. 16 Civ. 793 (PJH), 2016 WL 4502808, at *4 (N.D. Cal. Aug. 29, 2016) (dismissing claim where plaintiffs alleged that defendants had breached their fiduciary duties of "loyalty and prudence," without distinguishing between "prudence" and "loyalty"). Moreover, there are no factual allegations supporting that NFP breached its duty of loyalty. As NFP has previously argued, and Plaintiffs have not contested, NFP was not compensated for the use of the flexPATH Funds, nor did it receive any other benefits. (*See* Dkt. 86, NFP Reply Br. at 12-13). The SAC adds no new factual allegations that NFP benefitted from the use of flexPATH Funds, and instead relies exclusively on the affiliation between NFP and flexPATH. This is insufficient. (*See* Order at 16 ("The Court does not agree that it is proper to ignore the corporate distinction between flexPATH and NFP")).

### B. Plaintiffs Failed to Address Count II's Pleading Deficiencies

Plaintiffs' excessive fee claim is deficient for the same reasons as those identified in the MTD Order. As the Court previously explained, "this claim cannot be asserted against [NFP] because NFP's fiduciary duties do not extend to 'selecting or removing the Plan's investment options.'" (Order at 14 (quoting NFP Mot. at 6, 10; NFP Reply at 16)). Plaintiffs presented no new factual allegations in the SAC supporting that NFP had discretion over the Plan's investment options. Count II of the SAC should be dismissed with prejudice on this basis alone. *See, e.g.*, *ScripsAmerica, Inc.*, 119 F. Supp. 3d at 1265; *O'Connor*, 2012 WL 13195089, at *2.

Putting that aside, Plaintiffs' amended excessive fee claim does not "make it plausible that NFP actually breached its fiduciary duty." (Order at 15). Plaintiffs have abandoned the lion's share of their excessive fee allegations by eliminating the claim that Plan participants paid excessive fees for three funds—the MFS Emerging Markets Debt Fund, MFS Value Fund, and Vanguard 500 Index Fund. *See, e.g.*, *Harrison v. Institutional Gang of Investigations*, No. 07 Civ. 3824 (SI) (PR), 2009 WL 1277749, at *4 (N.D. Cal. May 6, 2009) ("[A]n amended complaint is supposed to repeat the allegations that were in the original complaint or they are considered abandoned."); *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir.1981)); *Bonham v. Adamson*, No. 17 Civ. 727 (RCJ) (CBC), 2018 WL 5283440, at *6 (D. Nev. Oct. 24, 2018) (same). Plaintiffs also have not meaningfully amended allegations in the FAC about the purported availability of lower-cost alternatives for the Contested CITs and the Vanguard TDF, which the Court already found were insufficient to state a claim. (Order at 15 ("'Alleging only the inclusion of more expensive share classes is not enough'" (quoting *Kurtz v. Vail Corp.*, 511 F. Supp. 3d 1185, 1199 (D. Colo. 2021)). Instead, Plaintiffs' new allegations in the SAC are that (i) NFP failed to recommend a lower-cost share class of the flexPATH TDFs that was available to the Plan; and (ii) NFP's process was deficient because documents produced in discovery purportedly do not reflect a consideration of lower cost alternatives. (SAC ¶¶ 122-23, 138,

17

147-51). These new excessive fee allegations are misleading, contradicted by the documents Plaintiffs rely on, and otherwise insufficient to state a claim.

*First*, Plaintiffs contend that, with respect to the flexPATH TDFs, NFP failed to recommend that the Plan use the R share class, which charged 19 or 20 bps, instead of the supposedly more expensive I1 share class, which charged 24 or 25 bps. (SAC ¶ 147). As Plaintiffs referenced in the SAC, "data [concerning the cost of both share classes] was presented to the Wood Defendants." (*Id.*). NFP cannot be held liable if "the parties that actually had authority to decide what funds to include in the Plan" chose a higher-cost alternative. (Order at 14-15). Indeed, the SAC's allegation that NFP "did not recommend that the Wood Defendants" use a lower fee share class of the flexPATH TDFs (SAC ¶ 147) is particularly off base, as the SAC alleges the Wood Defendants delegated TDF selection to flexPATH. (SAC ¶ 26). NFP was not responsible for advising flexPATH on share class selection, and any advice on share classes to the Wood Defendants cannot have caused Plan losses because flexPATH is alleged to have used its discretionary authority to select the flexPATH TDFs. *Friend*, 35 F.3d at 469 (the alleged breach of fiduciary duty must cause losses).

In any event, even accepting that the R share class was available to the Plan (it was not), the documents the SAC rely on makes clear that the I1 share class was not more expensive to the Plan. The I1 share class contains a 5 bps shareholder servicing fee "that will be credited back to the plan or passed through, upon agreement with the plan sponsor, to pay flexPATH Strategies 3(38) . . . fees." (Ex. 8 at 190). Thus, the flexPATH Index TDFs were offered to the Plan first at a cost equal to, and later cheaper than, the R share class expense ratio. (Ex. 12 at 217 (noting that the "[c]urrent flexPATH [TDFs] net fund expense ratio is approximately 0.175%.")).

*Second*, Plaintiffs are wrong that the Plan's meeting minutes or accompanying materials do not "reflect any consideration of the lower-cost shares indicated herein for the identified Plan investments." (SAC ¶ 151). As noted above, the SAC alleges that the Wood

18

Defendants were presented information discussing the cost of various share classes for the flexPATH TDFs. (SAC ¶ 147; Ex. 8 at 190). Moreover, NFP informed the Wood Defendants about the upcoming availability of a new, cheaper share class for the flexPATH TDFs in July 2017. (Ex. 12 at 217). This "M" share class of the flexPATH Index TDFs would have an expense ratio of 11.7 bps, representing a 33% fee reduction from the I1 share class.

The documents referenced by Plaintiffs also reflect that NFP regularly recommended that the Wood Defendants use the lowest cost share class for Plan investment options as part of a transition to "fee leveling."[11] For example, NFP repeatedly recommended that the Plan "move to fee leveling" and that as part of that process, the Plan should "[u]tilize investment funds with zero or low revenue sharing, typically the lowest expense ratio share class." (Ex. 9 at 199; Ex. 10 at 207). Plaintiffs' counsel has argued in numerous other cases that the failure to pursue fee leveling and limit revenue sharing constitutes a fiduciary breach. *See, e.g.*, *Sweda v. The Univ. of PA*, No. 16 Civ. 4329 (GEKP) (E.D. Pa. Nov. 21, 2016), Dkt. 27 ¶ 8(c) (alleging that plan fiduciaries breached their fiduciary duty by using funds with revenue sharing, which caused the plans to overpay for services); *Ramos v. Banner Health*, No. 15 Civ. 02556 (WJM) (MJW) (D. Colo. Nov. 9, 2016), Dkt. 118, ¶¶ 51, 70 (same); *Henderson v. Emory Univ.*, No. 16 Civ. 02920 (CAP) (D. Ga. Dec. 20, 2017), Dkt. 108, ¶ 8(c) (same); *Cates v. The Trustees of Columbia Univ. in the City of N.Y.*, No. 16 Civ. 06524 (KBF) (S.D.N.Y Feb. 7, 2017), Dkt. 76-1 ¶8(c) (same).

At bottom, Plaintiffs' allegation that meeting minutes and presentation materials reflect that NFP failed to recommend lower-cost share classes of investment options is belied by the very documents on which Plaintiffs rely. (SAC ¶¶ 45 (referencing November 18, 2015 meeting meetings discussing fee leveling); 45, 57 (referencing February 25, 2016

---

[11] Fee leveling is the process by which a plan attempts to ensure that administrative expenses are paid equally by participants regardless of each participant's investment selections.

DEFENDANT NFP RETIREMENT, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

meeting minutes that include discussion of fee leveling); 45 (referencing document that includes February 17, 2016 presentation by NFP to the Wood Defendants)). Far from showing a deficient process, these documents reflect that NFP recommended using the lowest cost share class for Plan investments to achieve zero or limited revenue sharing, which is exactly what Plaintiffs' counsel has alleged in other cases is an industry "best practice[]." *See Sweda*, No. 16 Civ. 4329, Dkt. 27 ¶¶ 65-67 (citing, as an industry "best practice," replacing revenue sharing arrangements to pay administrative expenses and noting that an "administrative fee solution with little or no revenue sharing typically results in meaningful fee savings for participants" (citation and internal quotation marks omitted)); *see also Henderson,* No. 16 Civ. 02920, Dkt. 108 ¶¶ 106-08 (same); *Cates,* No. 16 Civ. 06524, Dkt. 76-1 ¶¶ 88-90 (same).

*Third*, even if NFP had not recommended lower-cost share classes of Plan investments, Plaintiffs still have not stated an excessive fee claim. The Court has already found that alleging the availability of lower-cost alternatives is insufficient on its own to state an excessive fee claim. (Order at 15 ("Indeed, the Ninth Circuit has held that '[t]here are simply too many relevant considerations for a fiduciary, for that type of bright-line approach to prudence to be tenable.'" (quoting *Tibble v. Edison Int'l*, 729 F.3d 1110, 1135 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015))).

## C.   Plaintiffs Failed to Address Count III's Pleading Deficiencies

As the Court explained when it dismissed Plaintiffs' prohibited transactions claim against NFP in the MTD Order, this claim "entirely relies on the assumption that it is proper to ignore the corporate distinction between NFP and flexPATH." (MTD Order at 16). Considering the FAC, the Court declined to pierce the corporate veil based solely on allegations that the two companies are substantially overlapping with co-employees operating out of the same office.  (*Id.* (citing NFP Opp'n at 12-13)). Plaintiffs' SAC does not meaningfully amend Count III's allegations and, thus, this claim should be dismissed.

The only arguably "new" allegation relating to Count III is that "co-employees of both NFP and flexPATH" participated in recommending the flexPATH target date funds to the Wood Defendants. (SAC ¶¶ 44, 57). This is not new, as the prior Complaint made very similar allegations. (FAC ¶ 44, 56; Order at 2 ("NFP and flexPATH are operated and controlled by the same senior executive in the same office . . . ." (citing FAC ¶ 44); Dkt. 76, Pl. Opp. to NFP Motion at 12 ("Thus, the same individuals who run NFP also had ultimate authority over flexPATH's decisions to put and retain the flexPATH TDFs in the Plan.")). The Court already rejected Plaintiffs' argument that NFP engaged in a prohibited transaction because "the two companies are substantially overlapping, with both being operated out of the same office, both having the same executive leadership, and NFP's CEO and President controlling up to 75% of flexPATH." (Order at 16). The Court explained that while the companies had close connections, "there is less indication that the two companies were ignoring corporate formalities." (*Id.*). Rather, "NFP and flexPATH had separate agreements with the Wood Defendants"; there were "no allegations that the two companies shared profits or otherwise failed to maintain separate books"; and there was no "evidence that either flexPATH or NFP is undercapitalized or freely transfers assets to the other, which would be indicative of a sham corporate veil." (*Id.*).

Plaintiffs have not presented new allegations addressing any of these deficiencies identified by the Court. The SAC does not allege that NFP and flexPATH were ignoring corporate formalities, shared profits, failed to maintain separate books, or were undercapitalized or transferred assets. The SAC continues to allege that NFP and flexPATH had separate agreements with the Wood Defendants regarding their fiduciary responsibilities. (SAC ¶¶ 25-26). Plaintiffs' failure to add any new substantive factual allegations in the SAC that address the pleading defects identified in the Court's prior Order is a basis to dismiss Count III. *See O'Connor*, 2012 WL 13195089, at *2.

Having failed to address the deficiencies identified in the previous complaint, the prohibited transaction claim against NFP should be dismissed with prejudice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### D. The Court Should Not Permit Count I to Proceed Against NFP Under a Theory of Co-Fiduciary Liability

The sole claim the Court allowed to proceed in the FAC against NFP was for co-fiduciary liability with respect to flexPATH's alleged breach for selecting the flexPATH TDFs (Count I). This claim is reasserted in SAC ¶ 171, but it should be dismissed to the extent the Count grants flexPATH's renewed motion to dismiss. In addition, the co-fiduciary claim should be dismissed because it is precluded under 29 U.S.C. § 1105(d).

As this Court held, "§ 1105 . . . provides the conditions under which a plan fiduciary can be held liable for a breach by a co-fiduciary." (Order at 9). The statute provides that where an investment manager has been appointed under §1102(c)(3), "no trustee shall be liable for the acts or omissions of such investment manager." 29 U.S.C. § 1105(d). This Court previously dismissed Plaintiffs' co-fiduciary claims against the Wood Defendants as precluded under § 1105(d)(1) insofar as it relates to the flexPATH TDFs. (Order at 11). The Court held that "§ 1105(d)(1) immunizes fiduciaries from liability stemming from acts or omissions properly delegated to investment managers" except for liability under § 1105(a)(1). (*Id.*). Other courts, relying on ERISA's statutory text and legislative history, have held that named fiduciaries other than trustees are entitled to § 1105(d)(1)'s protection when the fiduciary appoints an investment manager. *See, e.g., Perez v. WPN Corp.*, No. 14 Civ. 1494 (NBF), 2017 WL 2461452, at *6-7 (W.D. Pa. June 7, 2017) ("[a] logical conclusion to draw . . . is that when control over assets of a plan has been delegated to an investment manager appointed by a named fiduciary," then that named fiduciary "obtains the benefit of the safe harbor provision of section 1105(d)(1)); *Harris Tr. & Sav. Bank v. Salomon Bros., Inc.*, 832 F. Supp. 1169, 1178 (N.D. Ill. 1993); *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1219 (2d Cir.1987) ("The obligations of named fiduciaries with regard to their duty of care . . . can be reduced by the appointment of an investment manager under ERISA section 402(c)(3).").

To the extent Congress intended that provision to protect named fiduciaries from co-fiduciary liability, it would make no sense to hold that a fiduciary like NFP (that was

22

responsible for merely advising the named fiduciary) to a higher standard of co-fiduciary liability. If named fiduciaries are afforded protection when they select an investment manager to exercise discretionary authority over investments, the fiduciaries that merely advise those named fiduciaries on those investments should be afforded the same protections. That is particularly true here because NFP's fiduciary duties were more limited under the IAA after flexPATH was retained. Under the IAA, NFP was charged with advising the Wood Defendants on Plan investments over which the Wood Defendants had discretionary control. (IAA at 3 ("the plan sponsor fiduciary(ies) acknowledge and agree that the plan sponsor fiduciary(ies) have the final and conclusive responsibility for all the investment options"); *id*. at 4 ("Client [Wood] will make all decisions with respect to any recommendation made by [NFP]")). Once the Wood Defendants delegated authority for selection of TDFs to flexPATH, the TDFs were outside the scope of NFP's fiduciary responsibility. Therefore, the safe harbor protections of § 1105(d)(1) should extend to NFP. To hold to the contrary would be inconsistent with the policy and purpose of § 1105(d)(1).

Because NFP is entitled to the protections of § 1105(d), it may only be held liable if it "knowingly participated" in another fiduciary's breach.  (Order at 9, citing 29 U.S.C. § 1105(a)(1)). The SAC does not allege facts supporting that NFP participated in flexPATH's alleged breach of fiduciary duty. As the Court explained in dismissing the co-fiduciary claim against the Wood Defendants, any alleged breach by flexPATH stemmed from its selection of the flexPATH TDFs without purportedly conducting a thorough investigation. (Order at 11). Because Plaintiffs' allegations do not show NFP's participation in flexPATH's alleged failure to perform such an investigation, Plaintiffs have not stated a plausible claim for relief against NFP under § 1105(a)(1). (*Id*.).

For all these reasons, NFP respectfully submits that the Court should dismiss Count I against NFP to the extent it is premised on co-fiduciary liability.

1

## III.   CONCLUSION

2          The Court should dismiss the claims against NFP with prejudice.

3
   DATED: October 29, 2021                        MILBANK LLP
4

5
                                           By: /s/ Sean M. Murphy
6                                              Sean M. Murphy

7                                              Attorneys for Defendant
                                               NFP RETIREMENT, INC.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28