UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |

| | |
|---|---|
| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

Proceedings:    **[IN CHAMBERS]  Order Regarding Motions to Exclude Expert Testimony [224, 221, 227]**

Before the Court are the following motions: (1) all defendants' motion to exclude the expert testimony of Al Otto, Mot., Dkt. No. 224; (2) flexPATH's motion to exclude the expert testimony of Dr. Gerald Buetow and Dr. Brian Becker, Mot., Dkt. No. 221; and (3) NFP's motion to exclude the expert testimony of Matthew T. Hoffman, Mot., Dkt. No. 227.   Plaintiffs Robert Lauderdale et al. ("Plaintiffs") opposed all motions. Opp'ns, Dkt. Nos. 240–42.

For the following reasons, the Court:

1. **GRANTS** in part and **DENIES** in part the motion to exclude the expert testimony of Al Otto;
2. **GRANTS** in part and **DENIES** in part the motion to exclude Matthew Hoffman;
3. **DENIES** the motion to exclude the expert testimony of Dr. Buetow and Dr. Becker.

## I. BACKGROUND

This case arises out of a dispute over the management of the Wood 401(k) Plan ("Plan").   Former plan participants allege that the Plan's investment manager and advisor prioritized their interests ahead of the plan participants' at their expense by placing popular investment 401(k) vehicles known as "target-date funds" in the Plan's lineup.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

They charge the Plan's sponsor with a failure to carry out its fiduciary duties in the best interests of the plan participants.

All defendants move to exclude expert testimony of four of Plaintiff's experts, Al Otto, Matthew Hoffman, Dr. Gerald Buetow, and Dr. Brian Becker. Mots. Dkt. Nos. 221, 224, 227. Therefore, defendants call upon the Court to fulfill its role as the "gatekeeper" of such evidence by attending to "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993).

## II. LEGAL STANDARD

Federal Rule of Evidence 702 permits expert testimony from "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education," if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. A trial court's "gatekeeping" obligation to admit only expert testimony that is both reliable and relevant is especially important "considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony." Mukhtar v. Cal. State Univ., 299 F.3d 1053, 1063–64 (9th Cir. 2002). Nevertheless, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010). Importantly, the Court's gatekeeper role under Daubert is "not intended to supplant the adversary system or the role of the jury." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (internal quotation marks and citation omitted). In other words, the Court is not supposed "to make ultimate conclusions as to the persuasiveness of the proffered evidence." Id. Rather, "[r]eliable expert testimony need only be relevant, and need not establish every element that the plaintiff must prove, in order to be admissible." Primiano, 598 F.3d at 565 & n.37.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

The Rule 702(a) requirements address an expert's qualifications and the relevance of the opinions he or she offers, and the requirement set forth in Rule 702(b) relates to the foundation underlying the expert opinions. The requirements set forth in Rule 702(c)–(d) most directly address the reliability of the expert opinions.

The Rule 702(a) requirement that expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue" goes primarily to relevance. Primiano, 598 F.3d at 564. The Rule 702(b) "facts or data" upon which the expert opinion must be based may come from the expert's personal observation, or the expert may simply be "made aware of" those facts or data. Fed. R. Evid. 703. The "facts or data" need not be independently admissible if those facts or data are of the type(s) upon which experts in the field would reasonably rely. Id.

The Rule 702(c) and (d) reliability indicators are subject to a more flexible analysis. According to the Ninth Circuit,

> [i]n Daubert, the Supreme Court gave a non-exhaustive list of factors for determining whether scientific testimony is sufficiently reliable to be admitted into evidence, including: (1) whether the scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential error rate; and (4) whether the theory or technique is generally accepted in the relevant scientific community.

Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 605 (9th Cir. 2002). The Supreme Court later held that "a trial court may consider one or more" of the Daubert factors in determining the reliability of nonscientific expert testimony. Kumho Tire, 526 U.S. at 141 (emphasis in the original).[1]

---

[1] "Daubert's general holding . . . applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire, 526 U.S. at 141.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:21-cv-00301-JVS-KES                    Date   November 17, 2022

Title   Robert Lauderdale et al. v. NFP Retirement, Inc. et al.

The trial court has "broad latitude" in deciding how to determine the reliability of an expert's testimony. Mukhtar, 299 F.3d at 1064; see also Kumho Tire, 526 U.S. at 152. The "test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Kumho Tire, 526 U.S. at 141. For example, in United States v. Hankey, 203 F.3d 1160, 1169 (9th Cir. 2000), the Ninth Circuit Daubert factors were inapplicable to a gang expert's testimony because "reliability depend[ed] heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." The Daubert factors, with their focus on peer review, publication, and the testability of methodologies, were simply inapplicable in that field of expertise. Id.

### III. DISCUSSION

#### A.   Motion to Exclude Expert Testimony of Al Otto

All defendants move to exclude the opinions of Mr. Otto regarding Defendants Woods' processes and prudence,  arguing that Mr. Otto does not utilize reliable principles or methods to support his opinions, will not assist the trier of fact, and renders opinions that are legally irrelevant.  Specifically, they challenge Mr. Otto's three specific opinions: that the Wood Defendants were imprudent in (1) making an initial selection of the flexPATH target-date funds for potential inclusion in the Wood Plan, (2) selecting flexPATH as an ERISA § 3(38) discretionary investment manager, thereby vesting flexPATH with the authority to make the final and ultimate selection of the Plan's target-date funds, and (3) monitoring the flexPATH target-date funds after they were included in the Plan's investment lineup.  Mot. 1.

1.    Statements About flexPATH Funds

**a.    Reliable Principles and Methods**

The crux of defendants' complaint is that Mr. Otto furnishes absolutist principles in rendering his opinions that they believe render them entirely unreliable.  See id. at 7, 10 (taking issue with his statements "immediate disqualifying factor," "never," "do not rely," "would have avoided," and so on).  However, for reasons raised by Plaintiffs in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

opposition, Opp'n 8–9, defendants largely ignore that Mr. Otto makes his statements in context of his experience and other industry practices, which explain the basis for his opinions.

Defendants also look to Mr. Otto's opinions rendered in other cases to complain that Mr. Otto's rigid approach contradicts his own practices, which employ a "flexible methodology." Id. at 7–8. Defendants also argue that the literature does not support Mr. Otto's principles, citing as an example, one handbook on which he relies. Id. at 12. However, defendants have the opportunity to challenge of the reliability of Mr. Otto's opinions on cross examination. Kennedy, 161 F.3d at 1230–31 ("In arriving at a conclusion, the factfinder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony. But their presence should not preclude the admission of the expert's testimony—they go to the weight, not the admissibility.").

Next, defendants contend that because Mr. Otto "does not specify how many alternatives" must be considered to be prudent, his process is impossible to validate and thus, unreliable. Id. at 12. They argue that Mr. Otto's principle that a prudent fiduciary "must consider an unspecified number" of alternative target-date funds before selecting one for the lineup is inherently unreliable because Mr. Otto concedes that there might be "good reasons" to winnow down the menu of options. Mot. 14. However, these are issues of weight, not reliability, of the evidence. Defendants merely disagree with Mr. Otto's opinions, which is not a basis to exclude his testimony.

**b.      Legal Conclusions**

Finally, defendants object to certain statements contained in Mr. Otto's reports to the extent that they are improper "legal conclusions and opinions" under Federal Rule of Evidence 701. Mot. 15. Specifically, they object to paragraphs 126 of Mr. Otto's Report and 26, 55, and 73 of Mr. Otto's Rebuttal Report. Id. The Court disagrees.

There is, of course, a difference between what is sufficiently "prudent" in the industry and practices of fiduciaries selecting and monitoring investments in 401(k) plans and what is considered *legally* sufficient "prudence" under ERISA. Experts are permitted

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

to opine what they believe is prudent using the standards of industry and experience. Troudt v. Oracle Corp., 369 F. Supp. 3d 1134, 1142–43 (D. Colo. 2019) (statements that "defendants' actions were not prudent by the standards of the industry and in the more prosaic usage of that term allows room for argument and proof that the duty of prudence under ERISA may be informed by other considerations" and thus "are admissible"). This distinction is "more than merely semantic." Id.

In essence, Defendants object to Mr. Otto's use of the word "prudent." Use of legal terminology "may be objectionable" if the terms have a "separate, distinct and specialized meaning in the law different from that present in the vernacular." Braun v. O'Brien, No. CV F 04-5474, 2006 U.S. Dist. LEXIS 108100, at *10 (E.D. Cal. Feb. 24, 2006) (citing Torres v. County of Oakland, 758 F.2d 147, 151 (6th Cir. 1985) (affording "latitude" to the expert to the extent that his opinions would "explain and clarify" disputed transactions and duties of loyalty). The question of whether a fiduciary has acted prudently under ERISA "is informed by legal precepts . . . to which [an expert] may not testify." Troudt, 369 F. Supp. 3d at 1142–43. However, an "expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied" so long as the expert does not testify whether that legal standard has been satisfied. Burkhart v. Washington Metropolitan Area Transit Authority, 112 F.3d 1207, 1207 (D.C. Cir. 1997); Marshall, 2019 U.S. Dist. LEXIS 208413, at *5 (holding that "expert testimony on whether Defendants followed the standard of care of a prudent fiduciary … [was] not prohibited legal testimony").

Here, Mr. Otto makes these statements about what a "prudent" fiduciary in the industry would do based on his experience, not whether defendants' actions violate ERISA. Indeed, as defendants themselves point out, Mr. Otto stated that whether conduct *meets* the standard of prudence under ERISA is a legal question for the trier of fact to decide. Glickstein Decl. Ex. A, Otto Transcript 336:21–337:3 ("Otto Tr."). It is sometimes "impossible for an expert to render his or her opinion on a subject without resorting to language that recurs in the applicable legal standard." Risto v. Screen Actors Guild-Am. Federation of Tv & Radio Artists, No. 18-07241, 2021 U.S. Dist. LEXIS 177526, at *22 (C.D. Cal. July 19, 2021).

The Court **DENIES** the motion as to Mr. Otto's opinions regarding the selection of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
| --- | --- | --- | --- |

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
| --- | --- |

the flexPATH target-date funds.

### 2.    Statements About Selecting flexPATH as Investment Manager

Mr. Otto offers two primary opinions about the selection of flexPATH as the investment manager:  that (1) a request-for-proposal process should have been conducted for the investment  manager; and (2) the Wood Defendants should have performed due diligence on flexPATH before hiring it as investment manager.

### a.    Reliable Methods

Defendants challenge paragraph 146 of Mr. Otto's report, which states that in his opinion, a prudent fiduciary would have engaged in a competitive bidding process before selecting flexPATH as its discretionary investment manager.  Mot. 18.  They contend that Mr. Otto "cannot" make this statement because ERISA does not mandate a competitive bidding process and that his view on what "best practices" are is inherently unreliable.  Id.  Plaintiffs contend that Mr. Otto makes his statements "derive[d] from his understanding of best practices from [his] experience, presentations, presentations" and so on.  Id. at 17.

It is true that Mr. Otto oversaw the request-for-proposal process at other large, defined contribution plan clients.  Struckhoff Decl. Ex. PX017, Dkt. No. 210-2, Otto Report ¶ 7 ("Otto Report").  But Mr. Otto does not draw upon these experiences when he rendered his opinion.   Mr. Otto simply states that "[the request for proposal] process is the most reliable method" but fails to explain why.  Mr. Otto does not compare them to the requests for proposals he oversaw at previous clients.  Mr. Otto does not go on to explain why a competitive process is valuable or reliable or what basis forms this opinion; he merely points out that Wood Defendants themselves employed this method when selecting their investment manager, and states that the disputed request-for-proposal document has flaws.  Otto Report ¶¶ 147–49.

At oral argument, Plaintiffs argued that his opinions about the request-for-proposal process were "dispersed" throughout his report and that these paragraphs provide context to his opinions set forth in paragraphs 147 through 149.  However, a review of these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

paragraphs reveal that, like paragraphs 147 through 149, none of these statements offer opinions are based on his experiences in the industry evaluating similar request-for-proposal processes.  For example, Mr. Otto states that Wood "should have" individually analyzed each investment manager candidate for the consistency of their approach, "should have" searched for conflicts of interest, "should" have looked at the track record of success, but does not state the value of doing so, whether other fiduciaries similarly have done so, or explain the consequences of not including this analysis in the request for proposal.  See Otto Report ¶¶ 28, 29, 30, 39, 93, 95, 96, 124, 140.  Unless Mr. Otto can base his testimony at trial on his experience, on other prudent fiduciaries' best practices, or his understanding of the literature available, the Court finds that his opinions rendered on paragraph 147 through 149 as unreliable.

### b.    Assist Trier of Fact

Defendants also contend that Mr. Otto's opinions are unhelpful to a trier of fact because Mr. Otto does not compare Wood Defendants' process to any other fiduciaries, other approaches, or fiduciaries.  Mot. 20.  Because he merely attacks Wood Defendants' process and points out its flaws, his opinion is mere argument, given that a factfinder can simply look to the document that Mr. Otto quotes from.  Id. at 19–20.  The Court agrees. Mr. Otto opines that the Wood Defendants' request-for-proposal document was deficient but does not offer any other documents or analysis for comparison, despite asserting that he has experience with overseeing requests-for-proposal for other clients.  Unless Mr. Otto provides comparisons to other requests for proposal he oversaw or other requests for production in the industry to assist a trier of fact to understand what he means by "due diligence," the statements in paragraphs 147 through 149 are unhelpful.  Otherwise, factfinders can simply examine the document itself and come to their own conclusions.

In conclusion, the Court **GRANTS** defendants' Motion to Exclude as to paragraphs 146 through 149[2] of Mr. Otto's Report.  To the extent that Mr. Otto offers an

---

[2] Defendants do identify any other specific statements they are seeking to exclude on this basis. See Mot. 17–18 (seeking to exclude opinions on Wood's process for selecting a 3(38) investment manager because "Wood did not conduct a separate RFP" process, citing the paragraphs that address the request-for-proposal process).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

opinion on the prudence of selection of the 3(38) investment manager, he may do so only if his opinions are based on his knowledge of similar processes in the industry and experience as overseeing the request-for-proposal process at other large, defined contribution plan clients.

     3.     Statements About Wood Defendants' Monitoring of flexPATH Funds

### a.    Qualifications

Defendants first challenge Mr. Otto's qualifications to render the opinion because "Otto had gone into the software business and no longer functioned as a plan fiduciary." Mot. 21. Paragraph 16 of Otto's Report and testimony provided by Mr. Otto carefully limited his opinions to events occurring before 2016. See Otto Report ¶ 16; Otto Tr. 30:14–17. Because the flexPATH funds were added beginning in 2016, they argue, Mr. Otto is not qualified to render an opinion whether the monitoring of the funds after 2016 was prudent or not. Mot. 21.

Defendants' arguments are unavailing. The threshold for qualifications is relatively low, and it requires a "minimum foundation" of knowledge, skill, and experience. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1015–16 (9th Cir. 2004) ("Rule 702 contemplates a broad conception of expert qualifications."). The fact that the funds were added after Mr. Otto "left the industry" does not bar him from being able to opine whether Wood Defendants' conduct were reasonable in monitoring flexPATH's actions. This gap can be bridged by Mr. Otto's experiences and knowledge of the industry of the kind of conduct fiduciaries undertake with regard to monitoring investments.

### b.    Legally Irrelevant

Nonetheless, the Court finds that Mr. Otto's opinions should be excluded to the extent that they are legally irrelevant.

The Court previously ruled that the flexPATH's status as an appointed investment manager precluded claims against Wood Defendants for conduct taken after the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

flexPATH's appointment—which includes the monitoring of the flexPATH funds. Feb. 8, 2022 Order 23–24, Dkt. No. 150;  Aug. 18, 2021 Order 10–11, Dkt. No. 98 (Wood Defendants had no fiduciary duty with respect to the target-date funds because under the agreement between flexPATH and Wood Defendants, flexPATH had the discretion to manage *all* target-date funds).  In other words, Wood Defendants can be liable for only their decision approving the flexPATH funds prior to flexPATH's retention, not the monitoring of the funds once they were added.  Any claims of imprudent monitoring are relevant only under Count 4, which concern the monitoring of fiduciaries.

Therefore, Mr. Otto's opinions are relevant *only* to the extent that Wood Defendants were imprudent in monitoring flexPATH as investment manager.  To that extent, the Court **GRANTS** the Motion to Exclude as to Mr. Otto's statements about Wood Defendants' conduct in monitoring the target-date funds under Count 1, but not as to their conduct in monitoring flexPATH's conduct under Count 4.  See Struckhoff Decl. Ex. 14, Dkt. No. 210-14, Otto Rebuttal Report ¶¶ 43, 45 ("Otto Rebuttal Report"); Report ¶ 106.

4. Statements About Collective Investment Trusts

Defendants argue that Mr. Otto's opinions should be excluded because Wood Defendants' decision to add the Collective Investment Trusts occurred after 2016.  For the same reasons as stated above, the Court finds that this argument is unpersuasive.  Mr. Otto can still draw on his experience and industry practices to opine whether the decision to add the trusts were well reasoned, and the issues that defendants have with his opinions go to the weight of the evidence.

The Court **DENIES** defendants' Motion to Exclude as to Mr. Otto's statements about Wood Defendants' conduct regarding the selection of the Collective Investment Trusts.

B. *Motion to Exclude Expert Testimony of Matthew Hoffman*

NFP and flexPATH move to exclude Matthew T. Hoffman's expert opinions.  Dkt. No. 227.  Specifically, they allege that Hoffman lacked the qualifications to render

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

opinions on ERISA fiduciary process and target-date funds.  They also argue that his opinions are unreliable because they are based on unsupported, factual assumptions.  And finally, they move to stroke certain statements on the basis that they are legal conclusions, unreliable, and unhelpful.

First, Defendants move to dismiss all of Mr. Hoffman's opinions.  The Court declines to exclude all of Mr. Hoffman's opinions on the basis that he is unqualified.  The bar for an expert's qualifications is relatively low.  Hangarter, 373 F.3d at 1015–16. Defendants' arguments that Mr. Hoffman's lack of experience as an ERISA 3(21) or 3(38) fiduciary are not persuasive.  Mr. Hoffman has experience as an investment manager at Credit Suisse and had responsibility in managing client investments. Laroche Decl. Ex. 1, Dkt. No. 228-1, ¶¶ 9–17.  He also sat on an investment committee that was responsible in overseeing assets in a defined-contribution plan.  Id. ¶ 11.  He also has knowledge and experience in selecting investment managers.  Therefore, the Court agrees that Mr. Hoffman has the requisite qualifications to opine on the selection of investment managers.  While it is true that Mr. Hoffman has no specialized knowledge about target-date funds, he does have experience with the metrics that an investment manager would use in selecting investment options.  Thus, Mr. Hoffman is qualified to speak about the processes by which a fiduciary uses in the selection process.

The Court agrees with Plaintiffs that Mr. Hoffman's failure to recall certain "basic" facts about the case does not disqualify his opinions as inherently unreliable.  Cf. Network Prot. Scis., LLC v. Fortinet, Inc., No. 12-1106, 2013 U.S. Dist. LEXIS 138890, at *16 (N.D. Cal. Sept. 26, 2013).  First, the issues regarding his confusion about the corporate structure between NFP and flexPATH are ameliorated by the fact that Mr. Hoffman accurately described that both the Wood Committee and flexPATH selected the target-date funds and clarified his testimony regarding flexPATH's discretionary authority.  Given that Plaintiffs have alleged that NFP and flexPATH did not share an arms-length relationship and provide evidence suggesting an overlap in executive officers and offices, Mr. Hoffman's confusion as to the ownership structure is understandable. Second, there is no reason to conclude that these errors impacted his analysis or were in any way material to his conclusions.  Defendants will have an opportunity upon cross-examination to test his conclusions based on any "perceived lack of knowledge." Marshall v. Northrop Grumman Corp., No. 16-06794, 2019 U.S. Dist. LEXIS 208414, at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-00301-JVS-KES                    Date    November 17, 2022

Title    Robert Lauderdale et al. v. NFP Retirement, Inc. et al.

*10 (C.D. Cal. Oct. 26, 2019) ("Vigorous cross-examination of [inadequacies in the expert's approach] allows the [fact-finder] to appropriately weight the alleged defects and reduces the possibility of prejudice.").

Defendants' arguments that Mr. Hoffman "plainly did not review the factual record" are misplaced.  Mr. Hoffman provided opinions as to conduct before the launch of the target-date funds and the hiring of BlackRock in 2015.  Hoffman Report ¶¶ 95–112; Hoffman Rebuttal Report ¶ 23–26 ("Hoffman Rebuttal").  Mr. Hoffman reviewed the appropriate records that were provided to him, such as the 2015 meeting minutes and deposition transcripts, to reach these conclusions.  In fact, Mr. Hoffman points to the *lack* of documents or research during this period.  Hoffman Rebuttal Report ¶ 29–30.  While Defendants point to testimony demonstrating that Mr. Hoffman did not review the September 2015 Fiduciary Investment Review, which Mr. Hoffman admitted to have been relevant, this alone does not render the entirety of his opinions as unreliable.  At oral argument, Defendants argued that even accepting that Mr. Hoffman reviewed the appropriate records related to the creation of the funds in 2015, "much of his opinions are focused on postcreation."  The Court agrees that Mr. Hoffman's opinions should be cabined to around 2015 and before, which is the relevant time period for the creation and launch of the target-date funds.  Accordingly, the Court excludes any post-2015 statements made by Mr. Hoffman.

Next, Defendants move to exclude certain statements made in Mr. Hoffman's report on the basis that they are legal conclusions, are not based on reliable methodologies, and are pure speculation.  Specifically, Defendants move to exclude Mr. Hoffman's:

1.    State-of-mind statements
2.    "Breach-of-trust" statements
3.    Statements about what an independent fiduciary would do before recommending untested, new funds
4.    Statements about the underperformance of flexPATH target-date funds
5.    Statements about whether NFP was "incentivized" to sell target-date funds
6.    Statements about NFP's and flexPATH's processes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-00301-JVS-KES                    Date    November 17, 2022

Title    Robert Lauderdale et al. v. NFP Retirement, Inc. et al.

The Court considers each argument in turn.

    1.    <u>State-of-Mind Statements</u>

Defendants appear to move to exclude certain statements contained in paragraph 39 of Mr. Hoffman's report which state, based on the language in the Request-for-Proposal, "The Fiduciary Committee working on the [Request-for-Proposal] (at that time) did not want the Investment Consultant to sell its own products to the Plan." They essentially object to the "did not want" statement, arguing it constitutes an improper opinion about the Wood Committee's intent. The provision of the document from which Mr. Hoffman drew his opinion states:

> The selected Consultant must have no vested interest in, must not be employed by, nor have been the recipient of any present or future economic opportunity, employment, gift, loan, gratuity, special discount, trip, favor, or service in connection with any vendors who provide investment or other industry services in relation to the retirement plan associated with this [Request-for-Proposal].

Defendants are correct that Mr. Hoffman's statements about the Wood Committee's intent are impermissible. <u>Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ.</u>, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013) ("Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind."). A trier of fact "is sufficiently capable of drawing its own inferences regarding intent, motive, or state of mind from the evidence," so such testimony would "merely substituting the expert's judgment for the jury" and thus would not be helpful. <u>Id.</u> Plaintiffs do not appear to dispute this, but they argue that Mr. Hoffman should still be permitted to testify about what the Request for Proposal prohibited, and that NFP contravened that provision by presenting the flexPATH target-date funds before it was hired as the Plan's consultant. Opp'n 15.

However, the Court finds that such testimony will not assist a trier of fact, who can simply read the relevant language and determine whether NFP violated that provision.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

The Court thus **GRANTS** the motion to exclude Mr. Hoffman's statements regarding the Wood Defendants' intent with respect to the Request for Proposal provision.

>        2.        "Breach-of-Trust" statements

The parties dispute whether Mr. Hoffman's repeated usage of the phrase "breach of duty of trust," Report ¶¶ 45, 77 ("breaches of fiduciary trust" and "breach its position of trust"), and "fiduciary duty," Hoffman Rebuttal ¶¶ 7, 9, constitutes impermissible legal opinion.  While the Ninth Circuit has recognized that it is "sometimes impossible" for an expert to render his or her opinion "without resorting to language that recurs" in the applicable legal standard, the Court finds that Mr. Hoffman went beyond simply "conveying, in plain language" what conduct would be outside the industry practice. United States v. Diaz, 876 F.3d 1194, 1198 (9th Cir. 2017).

To the extent that Mr. Hoffman offers his professional opinion about what prudent practices an investment manager would take in NFP's position, his statements are not excluded.  However, Mr. Hoffman's statements concluding that NFP "breached its fiduciary trust" or "duty of trust" go to ultimate issues of law and should be excluded. The Court thus **GRANTS** the motion as to these statements.

>        3.        Statements about Recommending Untested, New Funds

Defendants argue that Mr. Hoffman's opinion that an "independent and unbiased Investment Consultant" would not recommend "a new and unproven set of funds" should be excluded because it is unreliable.  Hoffman Report ¶ 60; Mot. 15–16.  It is unreliable, they argue, because Mr. Hoffman ignored the Department of Labor's target-date fund guidance when rendering his opinion.  Mot. 16.  They speculate that this omission was intentional because had he considered the Department of Labor's guidelines, he would have been forced to admit that NFP's process was "perfectly" aligned.  Id.  They argue that failure to rely on these guidelines renders his opinions as unreliable because it ignored a generally accepted industry guidance.  Id.

Whether or not the Department of Labor's guidelines are generally accepted or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

even dispositive does not alone determine the reliability of an expert's opinion. While it may call into question Mr. Hoffman's opinions on this subject, this again goes to the issue of the weight of his opinions. The Court thus **DENIES** the motion and declines to exclude his statements on this basis.

4.    Statements about Underperformance of flexPATH Target-Date Funds

Defendants make similar arguments regarding Mr. Hoffman's opinions about the performance of the target-date funds and their removal as contained in paragraphs 72 and 77. They argue that these statements are unreliable because Mr. Hoffman never reviewed the Investment Policy Statement to determine whether NFP's actions were consistent with the policy statement.

In reviewing Mr. Hoffman's report, see Hoffman Report ¶¶ 19, 37, 66, 72, 26, 27, it appears that Mr. Hoffman likely reviewed the 2008 version of the Plan's Investment Policy Statement instead of the 2016 version, and rendered his opinions based on the 2008 version, see id. ¶ 27 ("I make three principal observations about Wood Group's IPS, and in particular, the IPS adopted in 2008"). But this is not entirely clear from his report, given that Mr. Hoffman references multiple versions of the Investment Policy Statement in 2008, 2016, and 2019. Id. ¶ 26 n.6. This might explain the discrepancies between Defendants' and Plaintiffs' reading of the Investment Policy Statement, and whether NFP's monitoring of the flexPATH Index target-date funds was consistent with the policy statement. However, the parties also dispute which version of the Investment Policy Statement was operative at the time the target-date funds were added. It is for the jury to determine which version of the plan is applicable. Mr. Hoffman would be subject to cross examination as to whether he used the correct plan.

The Court **DENIES** the motion regarding these statements.

5.    Statements About Whether NFP Was "Incentivized" to Sell Target-Date Funds

Mr. Hoffman opines that "[a]s co-owners, it is [NFP and flexPATH's] combined objective to maximize returns from both businesses. As part of a cross selling effort, NFP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

Investment Consultants benefit[t]ed if they sold flexPATH products."  Hoffman Report ¶ 79.

The Court disagrees with Defendants that this statement reflects Mr. Hoffman's perception of the "intent or motives" of NFP's executives.  Rather, Mr. Hoffman's statements merely present facts that suggest that there was a motive behind NFP's conduct.  Thus, the Court **DENIES** the motion regarding this statement.

6.    Statements About NFP's and flexPATH's Processes

Defendants argue that Mr. Hoffman's statements in paragraphs 126, 93, 94, 96, 97, and 100 through 106 should be excluded because they rely on the wrong industry standards: standards that are "applicable to SEC and FINRA audits."  Mot. 19.  Plaintiffs argue that despite Mr. Hoffman's failure to cite "any source" for his industry standard practices, this is not dispositive because Mr. Hoffman draws upon his experiences as a registered advisor, albeit one registered for the SEC.   Opp'n 21.

As the Court previously stated, the fact that Mr. Hoffman does not have "specialized" ERISA fiduciary knowledge does not exclude his opinions as inherently unreliable.  The Court finds that Mr. Hoffman's opinions about the processes of product creation, diligence, quantitative and qualitative analyses regarding investment products, see Hoffman Report ¶¶ 97,100–06, are still applicable.  "Any criticism" that NFP and flexPATH have about his analyses where the differences between "SEC and FINRA audit" practices versus practices in an ERISA context with respect to investment products go to the weight of his testimony.  "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony."  Kennedy v. Collagen Corp., 161 F.3d 1226, 1231 (9th Cir. 1998) (quoting McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1044 (2d Cir. 1995).

Defendants also move to exclude Mr. Hoffman's repeated references that NFP and flexPATH's processes reflected "no evidence" of "certain things" on the basis that they constitute impermissible "expert narrative."  An expert is generally prohibited from offering opinions that go to an "ultimate issue of fact" where doing so would "invade the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |

| | |
|---|---|
| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |

province of the jury." Berman v. Freedom Fin. Network, LLC, 400 F. Supp. 3d 964, 971 (N.D. Cal. 2019). The rationale is that experts who merely narrate factual events based on the record are not offering their "expertise and qualifications" to assist a jury in reaching a conclusion, but rather are displacing the jury as the factfinder. See A.B. v. Cnty. of San Diego, No. 18-cv-1541, 2020 WL 4430971, at *2 (S.D. Cal. July 31, 2020) (prohibiting video editor expert, who was designated as an expert to testify as to the process of video editing and synchronization, from narrating the events in a video to the jury); In re M/V MSC Flaminia, No. 12-cv-8892, 2017 WL 3208598, at *2 (S.D.N.Y. July 28, 2017).

However, experts are "permitted to analyze materials and formulate a narrative based on that information." Teledyne Risi v. Martin-Baker Aircraft Co., No. 15-07936, 2018 U.S. Dist. LEXIS 244461, at *22 (C.D. Cal. Apr. 24, 2018). This is precisely what Mr. Hoffman does. To the extent that defendants disagree with his conclusion that there was a fatally flawed process due to a lack of documents, steps, or analysis, they can subject him to vigorous cross-examination. But expert testimony should not be excluded "simply because [the parties] disagree with the conclusions of the expert." Kennedy v. Collagen Corp., 161 F.3d 1226, 1230 (9th Cir. 1998).

The Court **DENIES** defendants' motion and thus declines to exclude the challenged statements.

### C.   Motion to Exclude Expert Testimony of Dr. Gerald Buetow and Dr. Brian Becker

All Defendants move to exclude Dr. Gerald Beutow's and Dr. Brian Becker's expert opinions on the grounds that their opinions rely on flawed methodology and are unreliable. Mot. 8–14.

### 1.   Dr. Gerald Buetow

Dr. Buetow offers opinions on the target-date funds and collective investment trusts. Defendants argue that Dr. Buetow's opinions rely on methodology that is unsound

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. | | |

and is not widely accepted in the industry.

Defendants take issue with Dr. Buetow's opinion that target-date funds are "redundant" because the Plan could simply, as Defendants put it, "blend" the underlying funds to achieve a better result. Mot. 1. Specifically, Dr. Buetow opines that the flexPATH target-date funds are redundant because they are built using the same set of risk and return expectations and because they are derived from BlackRock LifePath funds. Id. at 4. They contend that his views are not shared with peers or even consistent with his own business. Id.

### a.    Replacement Funds Methods

Defendants contend that Dr. Buetow's method of identifying suitable alternatives for the target-date funds and contested collective investment trusts were fundamentally flawed because (1) he used method that "considered *ex post* performance of the funds at issue" and (2) he arbitrarily picked "suitable replacement funds" without an objective explanation.

Plaintiffs do not dispute that hindsight analysis is improper but contend that Dr. Buetow relied on ex ante data available to Plan fiduciaries at the time the challenged target-date funds and the collective investment trusts were added, which included data ending on December 31, 2015 (for the target-date funds) and data ending on June 30, 2018 (for the collective investment trusts). Buetow Report ¶¶ 86–88, Ex. PX18; Replacement Analysis ¶¶ 8–10, Ex. 3. Plaintiffs concede that even though Dr. Buetow computed a second composite score that relied on returns *after* the funds were added, he did not rely on this second score when arriving at his conclusions. Buetow Report, ¶¶ 86–88. The "purpose" of the second score was to determine the viability of the funds. Ex. 1, Buetow Tr. 348:22–349:6.

Nonetheless, Defendants argue that Dr. Buetow admitted to relying on the second composite score for "some" of the funds. Buetow Tr. ¶ 141:8–17 (identifying that he used the second composite score in the target-date, Core Bond Plus, and International Bond collective investment trusts analysis); Reply 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

The Court agrees that to the extent that Dr. Buetow's opinions rely on hindsight data (second composite score), they are unreliable because they rely on information not available to Defendants at the time they added the funds to the Plan. However, it is not clear whether his reliance on this score impacted his ultimate conclusions about the target-date fund and trust alternatives at the time the funds were added to the Plan. Defendants cite an excerpt from Dr. Buetow's transcript (page 363, line 8 through 18) to suggest that Dr. Buetow was not confident whether his methodology was "free" of improper hindsight bias. Dr. Buetow stated, "[W]hether it influenced me directly or not, I can't really say, but the composite score basically gave me all the information that I know to select these funds." Morrison Decl., Revised Ex., Buetow Tr. 363:15–18. Earlier, when asked whether he considered the second composite score in his rankings of replacement funds, he stated, "Honestly, in this case, I didn't, right. I mean, I didn't really need to for the reasons I stated." Id. at 363:12–14. Based on his testimony, the Court agrees with Plaintiffs that Mr. Hoffman's testimony merely confirms that he did not need to run the second composite score when preparing his rankings. The Court is not persuaded that Dr. Buetow's opinions were based on a flawed analysis. The Court thus declines to exclude his opinions about the replacement funds analysis on this basis.

Next, Defendants argue that Dr. Buetow subjectively cherry picked "suitable" funds without regard to any objective measure, despite admitting that all the funds he looked at were prudent. Mot. 10 (identifying Dr. Buetow's inconsistent decisions); Buetow Tr. 389:17 ("I'm familiar with Guggenheim"); 356:18–360:18 (declining to select other funds because he was not as familiar with them; they had historical problems; he had familiarity with the management team, and so on). Plaintiffs argue that Dr. Buetow's decisions were based not only on the composite score, but also on his prior "experience and knowledge" and the "qualitative" characteristics of the funds. Opp'n 9 (citing the Investment Policy Statement as authority to permit the incorporation of qualitative analysis).

The Court disagrees with Defendants that Dr. Buetow's analysis lacked any objective measure and was solely subjective. A review of Dr. Buetow's testimony regarding his methods reveals that he employed both a quantitative (composite scores) and qualitative analysis, drawing upon his experience and familiarity with the funds and their respective management teams, and considered both holistically when exercising

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |
|---|---|---|---|

| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |
|---|---|

judgment.  Furthermore, the Court disagrees with Defendants that merely because competitors may not use his composite score system, that renders his methodologies as unreliable.

Based on the foregoing, the Court **DENIES** the motion to exclude these challenged statements.

### b.    Statements re Creation and Selection of Target-Date Funds

Next, Defendants take issue with Dr. Buetow's statements that (1) only funds with at least five-years performance data should be presented, Buetow Report ¶ 73 and (2) target-date funds are redundant, id. ¶¶ 50, 54, 56.

The Court disagrees with Defendants with respect to the statements regarding fund performance history.  Defendants offer no justification as to why his opinions should be disregarded, other than to say that Dr. Buetow has been inconsistent in his opinion and has conceded that some funds with less performance history are still prudent.  See Opp'n 11.  This amounts to a simple disagreement about with his conclusion.  Defendants can raise such arguments on cross-examination or present their own experts to refute Dr. Buetow's conclusion.  See Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010), as amended (Apr. 27, 2010) (noting that "shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof," not exclusion).

Next, Defendants argue that Dr. Buetow's opinions on the construction of target-date funds are "junk science" and not shared by anyone in the financial industry.  Mot. 12.  Plaintiffs refute this claim, arguing that Dr. Buetow relied on his specialized knowledge in the investment management industry and applied the "Modern Portfolio Theory," developed by a Nobel Laureate, to assess portfolio construction techniques, including professionally managed investments.  Opp'n 13.  Using this technique, Dr. Buetow determined that these target-date funds were not "customized" but were merely repackaged target-date funds from BlackRock.

It appears that both parties agree that target-date funds utilize a "funds-of-funds"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:21-cv-00301-JVS-KES                          Date    November 17, 2022

Title    Robert Lauderdale et al. v. NFP Retirement, Inc. et al.

structure.  Thus, it would seem that the parties disagree whether utilizing this "off-the-shelf," "funds-of-funds" structure was prudent method of investment.   On one hand, Dr. Buetow and Plaintiffs argue that this method is "redundant," Buetow Tr. 72:19–73:17 (describing the differences between colloquial definition and finance-theory definition of "redundant"), because there is no customization by flexPATH with regard to these funds.  See Opp'n 14.  On the other hand, Defendants argue that this is an "absurd contention" because participants who lack financial knowledge cannot be expected to "cobble together" individualized finds.  Mot. 12.

Based on the foregoing, the Court disagrees with Defendants that Dr. Buetow's opinions are based on "junk science."  The parties ostensibly disagree with the weight of the methodology Dr. Buetow employs to reach his conclusions.  The Court finds that his opinions rely on sound methods, drawing on accepted finance theories and experience constructing investment solutions.  While Dr. Buetow's redundancy theory may not be shared with others in the industry, which Plaintiffs dispute, this alone is insufficient to render his opinions as unreliable.  Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013) (describing Daubert's "list of factors was meant to be helpful, not definitive" (quoting Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137, 141 (1999))).

The Court thus **DENIES** the motion as to the statements regarding the construction of the target-date funds.

        2.   Dr. Brian Becker

Defendants move to exclude Dr. Becker's opinions about damages to the extent that they are derivative of Dr. Buetow's opinions.  Dr. Becker was asked to compare the performance of the challenged funds with the funds identified by Dr. Buetow.  Because the Court has determined that Defendants have not shown that Dr. Buetow's fund-replacement analysis was so flawed as to be rejected, see supra pp. 16–17, the Court declines to exclude Dr. Becker's damages calculations.

Defendants also argue Dr. Becker's opinions are flawed because he "arbitrarily ended his damages calculations as of December 21, 201," suggesting that failure to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:21-cv-00301-JVS-KES | Date | November 17, 2022 |

| | |
|---|---|
| Title | Robert Lauderdale et al. v. NFP Retirement, Inc. et al. |

incorporate the 2022 period would decrease Plaintiffs' damages.  Mot. 13.  Plaintiffs shift the burden on Defendants to provide an updated calculation and also argue that a failure to provide an updated damages calculation is not a basis to exclude his testimony.  Opp'n 18–19. While the Court disagrees with Plaintiffs that it is Defendants' burden at this stage, the Court agrees that failure to provide an updated calculation is not a basis for excluding his testimony.  Disputes about damages calculation can be resolved at trial, when the parties present different methods for calculating plan losses.  See Tibble v. Edison Int'l, No. CV 07-5359, 2017 U.S. Dist. LEXIS 130806, at *43, 49 (C.D. Cal. Aug. 16, 2017) (choosing a method of calculation from the ones submitted by the parties).

The Court in sum **DENIES** the motion to exclude Dr. Becker's expert opinions.

## VI. CONCLUSION

For the foregoing reasons, the Court:

1.   **GRANTS** in part and **DENIES** in part the motion to exclude the expert testimony of Al Otto;
2.   **GRANTS** in part and **DENIES** in part the motion to exclude Matthew Hoffman;
3.   **DENIES** the motion to exclude the expert testimony of Dr. Buetow and Dr. Becker.


**IT IS SO ORDERED.**